Good morning, Your Honors. My name is Kirk Chamberlain. I'm here representing Chubb Custom Insurance Company directly and as sub-reggie to a non-profit Jewish retirement community called Taub Korett. We're here on an appeal of a motion to dismiss our complaint. We submit that in this instance the district court committed error, quite frankly, starting with their review of our complaint. The court there used something much more akin to a summary judgment motion standard than a simple dismissal standard. Can I just stop you for one minute? Yes, sir. I realize we've got some very heavy sledding to go through on this, but I just have to ask, as somebody who practiced business law for 37 years, I am stunned that a company as large and as sophisticated as Chubb would even be in this situation. It's just kind of things are a little backwards and we're kind of working the statute a little. How did this happen? I mean, why wasn't the normal procedure followed on this? Can you give us any indication at all? I guess I would ask you to illuminate a little bit what a normal procedure. You're talking about What I mean is where instead of having the insured pay and then you pay them, which creates the issues we're dealing with today, whether rather than doing that, that you would instead get involved and make it other arrangements that would be more typical. Sure, your honor. Chubb issued a third party and financial liability policy. And what had happened is that our insured had engaged in remediation activities and then reported that claim. And because of the nature of ongoing remediation activities, they started down the road with their soil remediation. So basically they acted before they let you know. Is that what you're saying? Yes. And because of the continued nature of it, they continued down the path. And because of the soil remediation, we had to let that path finish so they could submit the claim to us for a completed remediation. I looked at this and I thought, what? Right. Typically, especially a straight general liability policy, there can be some earlier intervention. Okay. All right. I forgive that question. I wanted to understand the context. Well, it is unusual. And you raise a point on does that create an issue. I don't think it does, your honor. And I'll explain why. What it does is it creates a breach berth under CERCLA. And it's not something that you normally contemplate. So we're really looking at issues backwards from what they would normally be. So it puts a greater burden on you. It's a burden that I know you're going to manfully do your best to shoulder. So we'll look forward to that presentation. Well, let's shift right into CERCLA then, your honor. Chubb has brought claims both under 107 and 112. The important factor is that under 107, Chubb brings its claim in subrogation. And that's a subrogation both, more importantly, under the contract, the insurance contract. But the subrogation only can come through the State action, can it not, unless you're going to amend the statute or portion of it, just amend it right out of existence. Are you talking about 112, then? Well, I guess what I'm saying is, well, I probably should save that more for 112. In the Supreme Court's decision of what constitutes a response and who the private parties are in United States v. Atlantic Research. Correct. I'm troubled as to how you end up being one of the people that's covered under 107 in light of that definition. And let me explain that. Because for purposes of 107, Chubb is top correct. We stand in their shoes, and there are, as this Court well knows. Well, that's the argument. But according to what the Supreme Court wrote, any person under 107 is being limited to, in quotes, a private party that has itself incurred cleanup costs. So it's your position that even though this was the, I don't want to call it the synagogue, the school, whatever it was, retirement community, actually did this work. They responded. You're saying that because you're subrogated, that you are they. And for purposes of this, we are they. I mean, there's hundreds of years of both common law and contractual case law talking about that an insurance company or, quite frankly, any entity that pays on behalf of another, and that's what we did through reimbursement. I understand under State law concepts and normal insurance concepts, but we're talking about a Federal statute that gives certain benefits, and these terms are being defined. Correct. The Supreme Court's defined this in a particular way. And I would submit that under 107, instead of it saying suing on behalf of Chubb, which we did not do, that's in our allegation, we are Chubb as subrogate to Taub Courette. For purposes of 107, we are Taub Courette. Taub Courette is the any party or any person in that context. We are Taub Courette for purposes of 107. We are suing for the monies that they paid that we reimbursed. And they are entitled to get those back as an innocent landowner, as opposed to 113, a co-PRP, to get those monies back. That's not before us, right? That's not before you. But it's important because a lot of the cases, as you all know, especially under CERCLA, given its somewhat tortured drafting history, you know, creates these dichotomies. And the claim that my colleagues are making, that these are somehow overlapping or one is going to erase the other, which is simply not true. And the reason that is, is because under 112, as Your Honor is pointing out, now we are Chubb. We are any person who has paid monies. And we are seeking our statutory CERCLA right, if you will, on behalf of ourselves to seek reimbursement or recovery. And is it your position that the contractual equitable subrogation claims are not governed by state law, that they are, in fact, governed by CERCLA here? Are you trying to piggyback them? I think that our subrogation rights under 107 is a state law, common law, contractual right. That under our policy, when we pay it, we become TAOB correct. So under that understanding, then, any state statute of limitations on such rights would apply here as well, would it not? No, sir. Why is that? Because for purposes of 107, we are TAOB correct. We are not Chubb. And our complaint alleges that. We are TAOB correct. Yeah, counsel, as I understand, what you're saying is that you can make a 107 claim, and that for purposes of that claim, because of subrogation, you can make it if TAOB could have made it. If TAOB could have made it before you reimbursed them, then you can make it, right? Yes, Your Honor. Yes, Your Honor. Although, that may link to another problem on whether or not we have a damage at that point. But standing in TAOB's shoes as subrogation, yes, we are bound to stand in their shoes for all purposes, and we make the claim as TAOB correct under 107 at that time. And what happens to 112C in terms of subrogation if you can graft a state contractual equitable subrogation concept onto 107? Well, 112, Your Honor, is simply an alternative remedy for us, or it's a direct ---- But wouldn't this, in effect, render 112 meaningless if you could add the state law, piggyback that onto 107? It doesn't. And there are two reasons. Well, there's two comments on that. Both Atlantic Research, Your Honor, has referred to in the congressional record state. In fact, I have the congressional record here that Atlantic Research is based upon. It says, it should in addition be noted that the legal remedies in this Act are cumulative and not exclusive. And then Atlantic Research points up on that. Let's say that's all true. Okay. So here's the difference. You're still saying that that's a state remedy. Here's the difference. Yeah. Under 107, we are exercising TAOB's rights for recovery because we are TAOB pursuant to our subrogation claim that comes under contract. Under 112, we are exercising CHUBB's rights as any person, which is the statutory right, under CERCLA. And they are companion overlapping remedies, I agree. We certainly can't collect twice. But in one instance, we are TAOB, and in the other instance, we are CHUBB. Which is the stronger claim from your perspective, 107 or 112? You know, Your Honor, under my analysis, I think 107. But I certainly understand 112C because the – you know, 112C really gets to the heart and the purpose of CERCLA, which has been articulated by this Court, the Supreme Court of Congress itself, which is twofold. Clean up sites and make the people who pollute pay. Okay. So under 112, CHUBB, again, by way of TAOB correct, funded a cleanup, taking out the soil and the soil remediation portion of this, and now seeks to get the reimbursement back from the people who actually caused the pollution and profited from what went on at the location. But were you a claimant as defined in the Act? Oh, I think we're clearly a claimant. In fact, even the district court didn't dispute that we are any person as that term is defined. No, I'm talking about not the term any person, but a claimant. Well, the issue there is who do we – whose shoes – it's kind of back to the subrogation now. Under the statutory subrogation, CHUBB slash TAOB correct. Right. We are the any person or persons who paid. Who's the claimant? Whose shoes – you know, whose shoes are we standing in to go after this money? So under one line, if we are CHUBB, we are standing in TAOB's shoes to go after the polluters. Another analysis, I think, is that TAOB slash CHUBB, the claimant really is the Regional Water Quality Control Board. They're the ones who demanded the cleanup and the funding of the soil remediation. Well, a claimant as defined in 42 U.S.C. 96015 says that a claimant is any person who presents a claim for compensation under this Act. Okay. Has CHUBB done that? Well – To the – to the Superfund and the like? Let's back up on that. That is one of the arguments. In fact, it was the key argument under 112 on the dismissal, and the Court there took, in my opinion, a piece out of the Hommett case, which is a district court case, and said that the claimant had to first make a claim against the Superfund. That's not true. First, the Supreme Court recognized in Atlantic Research – I believe this Court in Kotros – and even the Hommett case said the notice requirement only applies when the parties intend to assert the claim against the Fund. And that makes sense because the Fund, the EPA, is set up to have a pot of money together if and when it has a recalcitrant or nonexistent PRP to clean up the site. So if there's not another source, the Fund comes in, does the cleanup, and then, you know, can try and get the money back. Obviously, if before we're going to go use the government's money, our tax dollars, they want you to go get a claim against the other entity. So the fact that claimant is referred to in the Act as a claim for compensation and a claim is also defined as a demand in writing for some certain, which doesn't mention the Superfund, does that in any way impact the meaning of the term? Well, I think it certainly does. And again, let me flip to two things, if I may. Again, back to the congressional record. The congressional record reads on this point, nothing in this Act requires pursuit of any claim against the Fund as a condition precedent to any other legal right. Oh, I agree. That actually goes along with what I was just asking. In other words, you don't have to make a claim against the Fund. Right. But if you're going to make a claim, you've got to make a claim against somebody. And the question is, did you, Chubb, make a claim for compensation under the Act? I believe we did. Not your insured, but you, Chubb. We made a claim by way of this litigation, and I don't think a prior notice is required. And it makes no sense under 112C, because 112C reads any person, including the Fund, who pays compensation to this chapter. And reading it the way Your Honor is indicating would mean the Fund would have to first make a claim against the Fund before it could go after the polluting parties. I guess just to back up so we're clear, 107, two arguments were raised. The first argument was City of Chico. The City of Chico case, which, quite frankly, I think is correct, doesn't apply here. There, Your Honor, and it kind of talks about what you were talking about, you had an insurance company as an insurance company trying to claim under 107. Or in the alternative, claim is they're insured who was a polluter. And they cannot do that. That's 113 as we talked about. That's why City of Chico doesn't apply. As to this argument about our claim under 107 would be entirely duplicative for 112, I've explained the reasons. One is, again, we are TK, we are exercising TK's rights to get this money back as opposed to our statutory subrogation right, which is under 112. But under your understanding of 107, in order for it to fly under that section, you have to have the benefit of the state contractual and equitable subrogation doctrines, right? Yes. Yes. I think our subrogation. I mean, but again, that makes sense and it's kind of funny. The amicus on the other side, United Policyholders, talks about that somehow allowing insurance companies to get their money back will hinder policyholders or hinder cleanup, and it's just the opposite. It's just the opposite. Well, that's the policy aspect of it, and I'm not really talking about that. I'm just talking about the, I want to be sure I understood correctly, that it is Chubb's position that in order for it to recover under 107, that you, in effect, are grafting the state contractual and equitable subrogation causes of action onto 107 to be able to do that. I would agree, except for the term causes of action. Well, I think. Let's take that out, then. Claims, then. I think the fact that goes back hundreds of years and has been incorporated in contracts, and specifically insurance contracts, that if Entity A pays on behalf of Entity B, they stand the shoes of Entity B for purposes of going after the third party tortfeasor or wrongdoer. And I think that's where the analysis starts. Counsel, Judge Gould, if I could ask you a question on that. Yes, sir. Does the subrogation concept necessarily depend on State subrogation law, or can there be a principle of subrogation applied as a matter of interpreting circle? That is, why couldn't our court say that to avoid unjust enrichment of the parties to put the contaminants in the site and to facilitate quicker cleanups, we are going to have to interpret 107A to have a subrogation component? Well, I think that's entirely right, Your Honor. And again, I probably blew through that too quickly. Again, 107 is an extremely broad chapter, and it's been read, again, by the Supreme Court and this Court to include claims brought. And I think, certainly, Chubb, through Topp-Courette, as a payer of the cleanup, is entitled under the statute to stand in the shoes of Topp-Courette. Otherwise, it leaves no remedy. How do we interpret, then, the Supreme Court's language in Atlantic Research that any person means a private party that has itself incurred cleanup costs? Because we are the private party. We stand in the shoes of. That's the subrogation concept. So you're grafting onto the Supreme Court's language the concept that you have incurred the costs when, in fact, in this case, what do you call it? Topp-Courette. It's T.K. or Topp-Courette. It makes it easier, yeah. Yeah, T.K. It's T.K. that actually incurred the cost. Right. And by virtue of our payment of that payment, we are T.K. standing in the shoes of that. If subrogation applies, either on the basis that Judge Gould suggested that we find as a matter of policy that it is beyond just enrichment to let the real polluters get away with something because of the way Chubb handled this, Congress couldn't have possibly intended that, or alternatively, which was your original point, that the state traditional insurance subrogation, equitable subrogation concepts, are grafted into the understanding of 107. Correct, Your Honor. It almost, you know, it's funny how things come full circle. We're almost back to your beginning comment in this kind of cart-horse issue. We, you know, T.K. did pay here. T.K. is a party that qualifies. Right. By standing in the shoes of T.K. because we paid then T.K., we are T.K. And I think that is clearly read into the statute that way. Do you want to save any time, though? I do. I didn't get to the State law claims, but I'll just say this last thing. In our 87 pages of our complaint, we alleged more than sufficient facts to support our claim, and the record, I think, is glaringly clear that the Court ignored or flat-out rejected some of our allegations to erase our State clauses. And your opinion, the way you get around the State statute of limitations is a continuing violation or that it was the payment itself by you to T.K. that triggered the statute. Is that right? Both are. First, our payment triggers the statute because up until then we had no right, and the right has to be concurrent with the obligation. Let me think. On the other part of it, if we are T.K., our allegations allege T.K. paying all the way through the middle of 08 and did not get a sign-off until 09, and the Court rejected that and on its own came to a conclusion that it was 06, that it completely read the facts out of our complaint, which it can't do under this standard for a motion to dismiss. I understand. Very well. Thank you, counsel.  Yes, Your Honor. If I may, I'd like to begin by specifically addressing the questions which both you and Judge Gould raised. Fortunately, the statute itself, I believe, provides the answer to those questions. At section 107e2, the statute states that nothing in this subchapter, and by the way, the phrase subchapter in the context of CERCLA includes all of CERCLA, nothing in this subchapter, including the provisions of paragraph 1 of the subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section or a guarantor has or would have by reason of subrogation or against any other person. Now, as you probably know, CERCLA is not a model of drafting clarity. Really? Yes. If you track through the definition of guarantor, it is essentially a person who provides evidence of financial assurance and one of the means by which financial assurance. You're saying that's a defined term in CERCLA or just general understanding? It is, and one of the mechanisms by which financial assurance can be provided to regulators to provide cleanup are insurers. So it's, I believe, undisputed that an insurer is a guarantor within the context of CERCLA. Let me just be sure I understand. Your position is that in 107E2, that the term guarantor is a defined term? Yes. And that that defined term means a provider of financial assurance of some kind? Yes. Okay. That's correct. And as we noted in our briefing pages 22 and 23, in the city of Chico case, that specific issue was addressed, and although we believe that case was incorrectly decided because it was decided before Atlantic Research, that Court does discuss at some length these basic provisions. So under 107E2, Congress clearly indicated its intent to preserve the rights of subrogation to those entities who might be an insurance company, a demurator, a guarantor. And based on that, the fact that an insurance company who pays on behalf of their insured steps in under the terms of their contract and under the equitable principles in most jurisdictions, into the shoes of their insured, means that they are indeed a person within the scope of 107. They are exercising the rights of their insured. And ironically, in the city of Chico case, that's what led to the denial of the claim, because prior to Atlantic Research, it was determined by that Court that where the insured couldn't sue, neither could the insurer, because the insurer stepped into the shoes of its insured. And they discussed at some length traditional subrogation law, which the Court there noticed is among the oldest of equitable doctrines. Right. Congress clearly intended to preserve that oldest of equitable doctrines in an effort to serve the fundamental purposes of CERCLA, which are to encourage quick and prompt cleanup of environmental contamination, and to allocate the cost of that among all the entities who may in fact be responsible. The net effect of the district court's decision here would profoundly alter the scope and purpose of CERCLA. It would essentially preclude subrogation in contrary to the provisions of 107e2, except where an insured has either sued or been sued under 112, and therefore qualifies as a claimant. That would not only deny a right of recovery to those insurance carriers or other insurers, which CERCLA was intended to encourage, it would provide a significant windfall to those parties who caused that pollution by effectively obviating any potential liability under the statute. It would impose a significant burden going forward in the future on insurers who would then be required by their carriers to actually initiate a claim, to file a suit, before being paid under their policies. And that, in turn, would result in a significant delay associated with the initiation of cleanups. And, Counsel, Judge Gould, I wanted to ask you one question on that last point. Yes. Am I correct in assuming that the way these policies were initially written, they do not call, they do not require the insured as a conditioned precedent being paid to initiate a claim under CERCLA? That is absolutely correct. They do not. And there are policies like that out there in the world now, so that if we affirm the district court, then there are going to be some insurance companies on the hook to reimburse an insured, but unable, as here, to seek contribution, correct? That is absolutely correct, and that would apply, it's not in evidence before you, but in my experience, that would apply to the vast majority of policies that have been issued over the last 20-plus years and hundreds of millions of dollars. And then probably as a counsel for an insurance company, you wouldn't be able to say this, but is it possible that if insurance companies aren't going to be able to recoup a share of such payment, they would be slower in paying their insurance? That is entirely possible, and they would also be far more reluctant to issue policies in the first place, because yes, CERCLA cases. This doesn't apply to your company, of course. No, they might look for opportunities to bring a declaratory judgment action if there were any possible ambiguity in the policies. Yes. Of course, there never are in insurance policies. It would have a profound ramifications on the industry in the ways in which you have described and in subverting the fundamental purposes of CERCLA. Could you say what you think the effect would be on cleanups, that is, would cleanup actions be slower, would there be less, you know, voluntary agreement and teamwork to get these sites cleaned? Very much so, because in fact, if insurers are limited to Section 112, as the district court suggested, and as the district court construed, payments can only be sought through subrogation if they are made to a claimant, in other words, someone who has already pursued a case. And if, as the district court in the BMI case held, the insured can only seek recovery when it pays the money itself. The bottom line is this. When a claim is made, if there are other polluters other than the insured, the insurance company will make the insureds pursue those claims first, and it will make them pay that money first to ensure that they have incurred costs that would then justify it. And that is not actually an inequitable outcome, because given the way in which the allocation of liability works, an insurance company's insured might have 5 percent of the liability, but be the party who now owns the property and thus has to incur the cost. The other 95 percent of the allocated liability would be lost to them and to their carrier unless that procedure was followed. That would be an enormous burden not only on the insurance industry, but on those insureds who seek to engage in voluntary cleanups, and would result in significant delays and additional litigation contrary to the clear intent of Congress to preserve those rights precisely to facilitate quick, prompt cleanups and an equitable allocation of costs. That's very helpful. Thank you very much. Thank you. So let's now hear from the other side about this very clear statute that we're talking about. And you all are going to divide up time with Mr. Nebius, is that correct? Yes, Judge Smith. May it please the Court, my name is Kevin Haroff. I'm representing the appellee defendant, Ford Motor Company. There are a number of defendant appellees that are involved in this case. I'd like to take a certain amount of time this morning to address primarily the circular issues that have been the focus of your attention so far. Could you start off with the comment that Mr. Davis made about 107E2? Yes. Does that language in the statute say, from your perspective, what is the purpose  Does it say what he says it means? I, Judge Smith, in all honesty, I'm not sure I understand exactly what he says the statute means. The implication is that somehow subsection E is actually creating a right, creating a cause of action, but that's not what the language of that particular statutory provision says. The statute says, nothing in circular shall bar a cause of action that a responsible party or a guarantor has or would have by reason of subrogation or otherwise. It does not contemplate the affirmative assertion of any remedy, either by way of subrogation or otherwise. It just simply says, by virtue of this statutory language, the statute's not standing in the way of the assertion. So basically you're saying it doesn't create any right, it just simply says if there is such a right, this doesn't bar its application. Exactly. Okay. And again, Your Honor, what I'd like to do is I'd like to touch on the points that have been the focus of the Court's attention on CERCLA. I would like to reserve four minutes for my colleague representing Chevron to address some issues that I probably will not get to. Well, one or the other of you addressed the issue that both your colleagues on the other side mentioned, which is the public policy aspect of this, and that is if we agree with Judge Fogel, in effect the real polluters get off scot-free in some respect. Would you address that or your colleague? I would be absolutely happy to address that, Judge Smith. I don't believe that anything in Judge Fogel's decision or under CERCLA allows polluters to get off scot-free in any respect. The issue in this case is whether or not claims that could have been asserted against responsible parties were in fact asserted in a manner according to the provisions of the statute and with respect to the state law claims on a timely basis. Right. It is absolutely conceivable in this case that the insured, Taub Courette, could have been asserted against responsible parties. And, in fact, under Section 112C2, that is a prerequisite for the remedy of subrogation, in fact, to occur. Would policy go out in CERCLA's place? Would that have been what Congress intended where, in effect, the insurance company kind of holds off and says, let's see what they do and see how this all works out before we step in, because we really don't know whether we have an obligation, if, in fact, that's what they say. Your Honor, it's important to keep in mind that this case really illustrates this principle. The insurance company in this case did not fund a cleanup. It did not, by virtue of its payment of its claim, facilitate a cleanup in any way. The only reason that there was a cleanup that was conducted at the property at issue in this case was the Regional Water Quality Control Board issued an order. That order named Taub Courette as a known discharger by virtue of its ownership of the property, and Taub Courette went out and spent its own money properly to conduct the cleanup. The fact that there was insurance is helpful to Taub Courette, but it wasn't helpful to the public policy of furthering a prompt cleanup. In fact, in this case, it took a period of years for the insurance company to negotiate with its policyholder before those insurance companies were made available, just simply to make, according to the allegations of the complaint, the policyholder whole. That was the only purpose of that insurance payment. It was not to facilitate a cleanup. So from your perspective, it was the public entity that initiated this. The public entity didn't just go after DK. It went after probably other people in surrounding areas as is normal custom. In effect, they're being punished. What we're really, really dealing with here is the allocation of the cost amongst the insurance companies when they get involved. Is that what you're saying? It's really the allocation of the total pot of money that may be available with respect to making parties whole when they haven't gone out and undertaken action to clean up a site and incurring costs as a result of that. But there is nothing about the policy, and there's nothing about the relationship that the insurance company has with the policyholder that furthers the legitimate public policy of encouraging prompt cleanups. That public policy is furthered by the action of a regulatory agency issuing an order against a responsible party to do the right thing, clean up a problem. And that responsible party can itself, as you point out, bring causes of action against others who may have contributed under what, 113, I guess? Section 113 provides an opportunity to a named discharger, in this case, to pursue a contribution claim. Section 112C2 provided that the criteria governing Section 112C2 also provide, under limited circumstances, the ability for somebody paying a claim or reimbursing a claimant to assert a subrogation remedy. But I think you're right. Under Section 113, the remedy, first and foremost, that would be available to a party that is subject to an order would be a contribution claim. And your, is it your view that the right of subrogation is a, in effect, a Federal cause of action through this statute? Or is it a State cause of action that is, in effect, grafted on to CERCLA under certain circumstances? The remedy of subrogation is not grafted on to CERCLA at all. It is provided for in Section 112C2. Congress knew what a subrogation remedy looked like. And it provided expressly for that remedy in Section 112. So, in effect, if you, your opposing counsel suggests that under 107, that they have an equitable subrogation right under 107, I have raised the question whether that somehow, not necessarily nullified 112, but certainly renders its application of a de minimis nature. As the Court in the City of Chico case quite aptly characterized it, it would render it nugatory. I'm not sure if I know exactly what the definition of nugatory is. I think it's a Christmas. That would be right. It's a Christmas season term, maybe. I think that may be true. The point is we're dealing with a statute. And we're dealing with statutory language. And the task of this Court is to give effect to the statutory language that Congress enacted, not to read into the statutory language causes of action that, in fact, were never intended and don't exist. So, from the perspective of the public policy issues, which Judge Gould well raised, you're saying those take care of themselves. The statute in no way bars that. But those happen through other applications, primarily 113, which is not before us. Yes, Your Honor. Okay. Yes, Your Honor. And just to further that point to a limited extent, again, nothing in CERCLA, and this is part of what Section 107E says, precludes the assertion of state law claims, including state law claims based upon subrogation rights. The only difference with respect to a state law claim of subrogation is under state law you cannot assert a federal cause of action. You cannot assert a CERCLA claim. That's exactly the reason why Congress enacted Section 112C2 in order to deal with that problem. The problem that existed at the time that a CERCLA claim could not be asserted under state law, Congress gave an opportunity for parties under very specific circumstances to assert a CERCLA claim in federal court. But nothing in the statute, again, this is what Section 107E says, prevents a party, if it has a right under federal or state law, from asserting those rights. It just doesn't create any new ones. And your position is that E2 doesn't either. I guess it's 107E2, the one that he, the amicus counsel, mentioned. Yes. That doesn't create a right either. That simply says if there are such rights. No bar. They're not barred. Exactly right. What I'd like to do is, because I think, Judge Smith, you got it exactly right in your understanding of the application of the Supreme Court's decision in Atlantic Research governing the ability of parties to assert claims under Section 107A. The statute, as the Supreme Court said, absolutely allows any party to assert a cost recovery claim under Section 107. And that theoretically could include insurance companies. It could include any party that, in fact, incurs environmental response costs. The problem under Atlantic Research is if you don't have a party that has incurred response costs, then you do not have a claim under Section 107. And I think Your Honor's understanding of what Atlantic Research held in its application to this case is exactly right. That's what Judge Fogel interpreted as well, right? I think that is exactly what Judge Fogel interpreted the statute to mean. And I think it's consistent with a variety of different cases that have been decided both prior to Atlantic Research and since then. Both parties or both sides in this litigation, for example, cite to the Karras case as a case involving a party that was not a responsible party within the meaning of Section 107, but was allowed to pursue a cost recovery claim under Section 107. And the reason that the district court allowed the trustee of the trust that was created by responsible parties to undertake a cleanup was because the trustee was the party that did the cleanup. The trustee was the party that went out and engaged environmental response contractors that paid the bills, that negotiated with the government, that reimbursed the government for oversight costs that the government had incurred. In that case, the trustee, not a liable party, incurred the costs, undertook the cleanup, and therefore was entitled to a Section 107 claim. An insurance company that is simply paying money as a result of, in this case, a protracted settlement negotiation to satisfy a claim, an insurance policy claim, not a claim necessarily within the meaning of Section 112. An insurance policy claim is not paying response costs. It's negotiating and resolving its contractual obligation to a policyholder. What I'd like to do, with your permission, is talk a little bit more about Section 112c2, because that's a confusing statute. In part, it's a confusing statute, because it was subject to amendment in the mid-1980s.  Section 112 generally is as a result of the Superfund Amendments and Reauthorization Act of 1986, which modified, in particular, Section 12a. What that amendment did was really to respond to the same issue that was dealt with in this Court's decision in Howmatt, related to whether or not the 60-day notice requirement that is prescribed in Section 112a applies just to the assertion of claims against the Federal Superfund site, or also applies to civil actions that are brought pursuant to Section 107, or arguably against Section 113. The Dedham Water case, as well as this Court's decision in Howmatt, made it clear that the notice requirement set up in Section 112a did not apply to civil actions. It only applied to claims that were asserted against the Superfund. And that's all that this Court's decision in Howmatt did. And it was consistent with the amendments that Congress made in 1986 to Section 112 in general. The difficulty arises in kind of understanding how Section 112 really works, because of language that was dropped in Section 112a in the 1986 amendments, but was in the original version of the statute when it was enacted in 1980. And Congress did not intend at all to change that original intent in the statute. Section 112a, as originally enacted, made clear that a claimant, 60 days after presenting a claim to a liable party under Section 107, could make an election. It could elect either to present the claim, the claim for payment by the Superfund, or it could pursue an action against an owner, operator, guarantor of a contaminated facility, or some other person, which theoretically could include an insurance company. And the concept of that election, the opportunity to either pursue a claim against the Federal Superfund, or to pursue a claim against other parties, is an important one, because that's really the only way the subrogation remedies that are created under Section 112c make a lot of sense. Under Section 112c1, subrogation remedies accrue to the Federal Government when formal claims against the Superfund have been asserted and processed. Subsection c2 relates to the second situation where, instead of electing to proceed against the Federal Superfund, the party elects to proceed against other responsible parties, including potentially the parties that may have denied the claim when it was originally asserted against them. The important point, however, is that regardless of the election that a party seeking compensation might make under that original version of the statute, in either event, there is a precondition that must be met. And that precondition is the existence of a claim that has been asserted against a responsible party. Nothing in the 1986 amendments changed that original intent of Congress to require the existence of a claim that has been asserted against a responsible party, denied, and then the statute making available the election to pursue claims against the Federal Superfund or against other responsible parties. We cite some of the legislative history to the 1980 legislation, which was, in fact, also cited by this Court in the Helmut case. And it makes very, very clear that it is a requirement under any of the subrogation remedies that are created under Section 112 to have a claim asserted against a liable party before subrogation remedies can accrue, period. The purposes are so it can't be an in co-op claim. It's got to be one that's actually been made. It has to be one that is actually made. Now, it's not entirely clear what the parameters of the claim itself might be. The Environmental Protection Agency has promulgated regulations primarily to describe the way claims are asserted against the Federal Superfund. And in those regulations, there is some delineation about what needs to be in a claim that would be asserted against a responsible party first and foremost. But the bottom line is a claim as defined in the statute is a demand in writing for some certain. That's in Circle of Section 114. So it's got to be a letter. It's got to be something in writing that is submitted to a potentially responsible party that that potentially responsible party says denied. But it's got to be something. And in this case, regardless of what more it may have to be, nothing was done to create the status of a claimant in the person of tout correct. Nothing was done at all. It doesn't matter to me. But do you have an amicus involved? Not an amicus, but somebody else is going to be arguing. You've got two minutes. Yes, I do. And I see that I have two and a half minutes left. I would like to reserve the remainder of my time for my colleague representing Chevron. Very good. But with your Court's permission, just because the amicus, I believe, is going to talk primarily about the Circle issues, I'd like to see if the Court would allow amicus to argue before Chevron and then Chevron come up. As long as the total time doesn't change, that's fine. It will not, Your Honor. Okay. So amicus going first then? Okay. That's fine. Thank you. And amicus has five minutes, as I recall, right? Yes. And this is Mr. Nebious, is that correct? Nebious. Yes, that's correct. Go ahead. May it please the Court, I'm John Nebious with Anderson Kilinolik representing United Policyholders. We are a voice for policyholders and would like to thank the Court for the opportunity to come here from New York City and address these issues. You're probably glad to be out of there today, aren't you? Well, yes. I'm not sure I'll get back, but I may have to shovel some snow. You can suffer through it. Expanding avenues of insurance subrogation under Circle 107 is unnecessary. It's inconsistent with the statute's purpose and intent and would be bad for policyholders in California and elsewhere. It's unnecessary. It would lead to inequitable windfalls to the insurance industry and would actually reduce cleanup funds. Insurance companies are not PRPs. They take the money. If they subrogate, they would no longer be available in the future to address long-tail liability. The City of Chico case got it right. An insurance company has no responsibility to engage in remediation under the statute, and it would have no continuing responsibility under circumstances where more work were needed at the site. Does it make any difference? I mean, as a practical matter, your opposing counsel made the point that ultimately insurance companies price their policies and make them available or not make them available based upon how the finances work out for them. If they cannot pursue claims against third parties in this case, then it's going to cost them more money. Now, your argument probably is, look, you've got 113. You could have done this timely on this data. Actually, you could have done all that. Putting that aside for the moment, is there anything we should give credence to in the policy aspects of this? Or is that their problem because they didn't do it right? Well, it's, A, their problem. B, these policies were not underwritten on that basis. C, what they're trying to do is a shortcut where they're not necessarily making their policyholder whole. They're not even cooperating with their policyholder necessarily, but simply because they paid some money, they'd be able to go out and pursue any sort of claim and possibly could lead to absurd results where they would get more money than they actually paid out. They probably couldn't under subrogation, but is there anything in the record that indicates anything about the negotiations that took place between TK and the policyholders? I think both sides have mentioned that it took some period of time that probably delayed them filing under the state causes of action as well. But do you know anything about that? Can you point us to anything in the record that would elucidate the details of the negotiations and what happened in them, if indeed that is in the record? I'm afraid I can't shed any light on that, although there was this period of adjustment, which is partly what I'm talking about. You need to make sure that the policyholder gets made whole before turning to subrogation and existing avenues exist. What I can tell you is I want to clear up a couple of things that came up earlier. The idea under E2 that the insurance company is a guarantor is ridiculous. How do you feel about that? An insurance policy is not a guarantee, as we all know. If it were a bond, that might be a guarantee. So this particular provision doesn't create rights. It doesn't bar rights. I think more troubling is AIG's counsel's willingness to essentially admit that payment under the policy is contingent on whether the economic interests of the insurance company will be properly met down the line, regardless of what underwriting activity has been undertaken. And that's the kind of thing that shows the true situation that policyholders face in terms of trying to get coverage, caught between a rock and a hard place. Can you help me in terms of definition? I'm looking at sub 13 of the statute that defines the term guarantor, and it says that guarantor means any person other than the owner or operator who provides evidence of financial responsibility for an owner or operator under the chapter. What specifically, what evidence of financial responsibility does that refer to? That would be some sort of bond or other financial assurance. You know, the policyholder could cite to insurance as a basis for meeting that obligation. So in other words, if the regional water quality board said, look, you've got to put a lien on your property, we're going to shut you down until you do this, and the accused party says, look, we're going to give you this bond right here, and it's worth umpty gazillion dollars, we're going to assure you to get this done, is that what they're talking about? Yes. Or is it something different? That is what they're talking about. It would have to be something that for sure would be available. An insurance policy involves adjustment and may or may not get paid. A bond certainly would be paid. I mean, mine financial assurance, they won't accept an insurance policy. They'll only accept a bond. Okay. All right. Your time is up. Thank you for that. Thank you. And I guess we're now going to hear from, is it Chevron? Is that right? Very good. And whatever the balance of the time is, let's wait one second. So there you are, two minutes and 20 seconds. It may please the Court, Robert Goodman for Chevron Corporation. To answer your question on the length of the negotiations, Your Honor, in Volume 2, Tab 18, which is the Third Amended Complaint, at paragraph 45, it appears that Todd Korett had spent the money by November 2006 and then spent more than two years negotiating the claim. That's in the chapter. Read me that site again. What is it in the ER or the SER? 18. So it's Tab 18. Okay. And it's paragraph 45 of the Third Amended Complaint or thereabouts. Okay. And the payment was made. All right. Thank you. I wanted to address two issues that are unique to Chevron. One is the petroleum exclusion under CERCLA, and the second are the statute of limitations on the common law claims. Regarding the petroleum exclusion, the allegations in the Third Amended Complaint were never addressed by the district court, and we therefore think that the petroleum exclusion is not right for decision by this Court, that if the matter is remanded to the district court, the sufficiency of those allegations and whether they have pled a claim with respect to the petroleum exclusion, that would be the appropriate time to address those claims. Regarding the statute of limitations, there are two State law claims that were dismissed by Judge Fogel for negligence per se and strict liability. There is absolutely no legal authority that's been offered that would suggest that either of those claims could be a continuing tort. The tort is the injury to the property. That's when the statute begins to run. The injury to the property of the Chevron property had occurred by 1977 when Chevron vacated the property, and therefore, the statute began running. Under California law, courts have recognized a continuing tort of nuisance and continuing trespass. Those claims were not pled. They were pled in the First Amended Complaint, and then Chubb abandoned those claims. Therefore, the only – there are no continuing tort claims that were alleged in the Third Amended Complaint. The statute had run within three years of 1977. There's a three-year statute of limitations for injury to real property. Chubb pled no facts indicating that the contamination could not have been discovered and, in fact, alleges that contamination had been discovered by 2004 as reflected by the insurance policy. Let me say, that's on a separate property, if I recall correctly. No, I'm sorry. That's the – That's on 851. Yeah, that's the 851 San Antonio. There was an endorsement that referred to the December 8, 2004. That's that property. But most of this deals with the 901 San Antonio. Is that correct? That's correct, Your Honor. And 851 San Antonio was a former Chevron-granted service station. Okay. And at the record 18, page 133, there is the insurance policy that references a report that references a pollution incident at 851. Okay. And we believe that Judge Fogel properly drew the inference from that that the contamination had been discovered or certainly could have been discovered by that date, thus triggering the statute of limitations. Very good. Thank you for your presentation. Thank you, Your Honor. The gentlemen from Chubb and Chartas have a little bit of time left. How much is it? 49 seconds. 49 seconds. We're going to give you a full minute, Counsel. We're going to lay it on you here. Okay. Thank you, Your Honor. It's too easy. Quickly, 107E2 says exactly what it says, and that is if the right exists, it's preserved. And we have the right as a guarantor, and I respectfully disagree with that. But that's kind of circular, isn't it, based on what we talked about earlier? Circular how? In the sense that you said that they exist based upon the State law claim. The statute seems to, at least as I'm looking at it, it seems to say that if you have a right, it's not barred by this. It doesn't say it creates a right. Do you agree with that? It doesn't say it creates a right? No, Your Honor. I think it says if we have the right to stand in the shoes of TK, we have that right to stand in the shoes of TK. Okay. But that right exists independently of circular, right? No, I think circular recognizes it. Recognizes it or creates it? Recognizes it and creates it, allows it. Specifically, it's allowing Chubb to stand in the shoes of TK for purposes of 107. Okay. Second, and I can't, and I will point to the record quickly, you can't forget that TK is a nonprofit organization that in 2002 bought this environmental third-party liability policy. And to suggest that somehow the fact that it had $10 million of insurance in its pocket for a nonprofit organization to not play a role in facilitating the cleanup of this site is ridiculous. Does that have anything to do with circular? It has to do with my colleague arguing the public policy that this somehow impacts insurance. All right. Thank you very much. We appreciate all of you. You did a fine job. It's a very complex issue. We will do our best to render as understandable an opinion as possible. Your Honor, may I make one citation? Why don't you give it to us on the 28th day, okay? Just give us a letter. Give you a letter. Thank you. Okay. Thank you very much. Thank you all. Judge Gould, do you need a break? Yeah, I'd like a break for 10 or 15 minutes, please. Okay. We appreciate the understanding of Alaska's survival here. We will come back. The court is in recess until 10 minutes to 12.
judges: Duffy, Gould, Smith